```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
                        NORTHERN DIVISION

UNITED STATES OF AMERICA,)
                         )
    vs.                  )   CRIMINAL CASE NO. GLR-21-0120
                         )
DONTE ANTWAUN HERRING,   )
and XAVIER JONES,        )
                         )
            Defendants.  )
_____ )

                    Friday, September 23, 2022
                         Courtroom 7A
                      Baltimore, Maryland
                       Motions Hearing

BEFORE:  THE HONORABLE GEORGE LEVI RUSSELL, III, Judge

For the Plaintiff:
Paul Riley, Esquire
Michael Aubin, Esquire
Assistant United States Attorneys
36 S. Charles Street
Baltimore, Maryland  21201

For the Defendant, Donte Antwaun Herring:
David Walsh-Little, Esquire
The Law Office of David Walsh-Little, LLC
1014 West 36th Street
Baltimore, Maryland  21211

For the Defendant, Xavier Jeffrey Jones:
Tyler L. Mann, Esquire
Law Offices of Mann and Risch
101 E. Chesapeake Avenue
Suite 100
Towson, Maryland  21286

Also Present:
Special Agent Peter Hanlon, FBI
```

_____
                        Reported by:
                 Nadine M. Bachmann, RMR, CRR
                 Federal Official Court Reporter
                101 W. Lombard Street, 4th Floor
                    Baltimore, Maryland  21201
                         410-962-4753

```
 1              (Proceedings commenced at 10:38 a.m.)
 2         MR. RILEY:  Good morning,  Your Honor, good to see
 3    you.  Calling the case of Donte Herring and Xavier Jones.
 4    That's GLR 21-120.  Assistant United States Attorneys Paul
 5    Riley and Mike Aubin on behalf of the Government.  With us at
 6    counsel table is Detective Pete Hanlon, an FBI TFO of the
 7    Baltimore County Police Department.  We're here for a motions
 8    hearing,  Your Honor.
 9         And I do apologize for the situation with the writ.  I
10    accept responsibility for it.  Shouldn't have happened.  It
11    happened, and here we are.
12         THE COURT:  Don't fall too deep on your sword,  Mr.
13    Riley.  Things happen.  I got the message.
14         MR. RILEY:  Appreciate it.
15         THE COURT:  Mr. Walsh-Little, always a pleasure,
16    sir.
17         MR. WALSH-LITTLE:  Good morning, Your Honor.  David
18    Walsh-Little on behalf of Mr. Donte Herring.  He's to my left.
19         THE COURT:  All right, Mr. Herring, good morning to
20    you.  You can go ahead and have a seat.
21         All right, Mr. Mann, always a pleasure.
22         MR. MANN:  Judge, it's a pleasure.  Tyler Mann,
23    M-a-n-n representing Mr. Jones to my left and we're in the
24    back row again, so --
25         THE COURT:  Mr. Jones, good morning to you.  Watch
```

1    your head when you're standing up.  You can go ahead and have

2    a seat.

3         All right, pursuant to the Court's masking policies,

4    everyone in the courtroom shall remain masked at all times and

5    you may remove your mask only if you're engaged in a speaking

6    role and have been fully vaccinated.  I've been fully

7    vaccinated and will be engaging in a speaking role and as a

8    result, I'm going to go ahead and remove my mask.

9         As indicated, we are here for the purposes of a motions

10    hearing.  There are three motions or several motions that have

11    been filed, including a Motion to Suppress Statements on

12    behalf of Mr. Herring, Motion to Suppress Tangible Evidence on

13    behalf of Mr. Jones, a Motion to Sever counts, a Motion to

14    Seek 404(b) Evidence.  I have had the opportunity to review

15    those motions, as well as the various attachments. I'm not

16    quite sure -- I just received word that there are -- I don't

17    know whether or not there is potentially a need for this

18    motions hearing if the parties are still engaged in some sort

19    of discussion that would necessitate a few day postponement of

20    it, but I don't know.  I'm here to handle the motions.

21        **MR. RILEY:**  I think -- the Government is prepared to

22    proceed today, Your Honor.

23        **THE COURT:**  Okay, very good.  All right.

24        As indicated, we are here for the purposes of a motions

25    hearing.  We have ECF number 70 which is a Motion to Suppress

1    Statements by Mr. Herring.  According to the pleadings,

2    subsequent to Mr. Herring's arrest, he was spoken to by the

3    officers.  The officers received and asked questions related

4    to routine booking information.  Then he was provided with his

5    Miranda warning, advised of his rights, instructed to sign a

6    Miranda waiver -- instructed or ordered or whatever, his

7    Miranda waiver.  And I believe at least there's some

8    indication that he was advised that he wasn't waiving any of

9    his rights or something to that effect.  The Government has

10   responded indicating that any post-Miranda statements they do

11   not intend on using.

12        Is there anything else that needs to be discussed with

13   regard to that motion or Mr. Walsh-Little, do you just simply

14   submit on the record?

15             **MR. WALSH-LITTLE:**  No, Your Honor.  I submit.  I'm

16   not going to use the statements, obviously.  There's nothing

17   to be decided.

18             **THE COURT:**  Very well.  So that's going to be denied

19   as mute.

20        There's a Motion to Suppress Tangible Evidence and

21   derivative evidence and statements that were filed by Mr.

22   Jones.  It's my understanding that the Government is not

23   intending on using any of the statements by Mr. -- allegedly

24   or possibly made by Mr. Jones and are seeking to suppress

25   evidence related to the subsequent search warrants and arrest

1    warrants.  I've had the opportunity to review all of the

2    warrants, including the warrant for the cell phone which was

3    sort of a federal warrant for the cell phone which is a final

4    stage of the several warrants that were issued.

5         Mr. Mann, I'll hear from you on those or if you wish to

6    submit on the record.

7              **MR. MANN:**  Judge,  my client did not make any

8    statements, so that's not --

9              **THE COURT:**  But I thought it's also suppressed

10   tangible evidence.

11             **MR. MANN:**  I did make a motion on that,  yes.

12             **THE COURT:**  Right.

13             **MR. MANN:**  Yes.

14             **THE COURT:**  So I'll hear from you.

15             **MR. MANN:**  I'll submit on what I wrote, Judge.

16             **THE COURT:**  Okay.  Anything the Government wishes to

17   add?

18             **MR. RILEY:**  Yes,  Your Honor.  With respect to the

19   Motion to Suppress any post-Miranda statement made by Mr.

20   Jones, Your Honor is correct that the Government does not

21   intend to introduce any statement of Mr. Jones apart from the

22   routine booking information provided before or sort of at the

23   outset of that interview.  So that motion can be denied as

24   moot.

25             **THE COURT:**  Noted and granted.  So that's fine.

1      **MR. RILEY:**  Thank you, Your Honor.

2      **MR. MANN:**  I don't want to short-circuit this, but

3  as to the 404(b), I believe that we're having some discussion

4  so I do think that that's premature to argue at this point.

5  Although I think that there will be some 404 information

6  possibly that the Government will want to put forth at trial,

7  they have not stated as of yet.  So I think once we're closer

8  to trial and I had a conversation with Mr. Riley about this,

9  once we get closer to trial and they submit what they want --

10  if they submit any 404(b) information, at that point I may

11  file a motion in regards to that.

12      **THE COURT:**  That's fine.  So what I will do is I

13  will deny that motion without prejudice.

14      **MR. MANN:**  Thank you.

15      **THE COURT:**  Subject to you refiling something which

16  will be litigated at the pretrial conference.

17      **MR. MANN:**  Perfect.  That makes sense.

18      **THE COURT:**  Okay.

19      **MR. RILEY:**  Thank you, Your Honor.  Just to pick off

20  where we left off with respect to the Motion to Suppress

21  evidence filed by Mr. Jones, ECF 71, so there were a number of

22  components to that motion.  The various warrants were

23  challenged.  There was a contention that the warrantless

24  arrest and subsequent search of Mr. Jones was improper.  You

25  know, it was a boilerplate motion, Your Honor, so I'm not

1    quite sure if there are additional arguments that defense

2    intends to make or if he intends to ask questions about the

3    warrant.  I suppose in light of counsel's representation, the

4    warrants aren't going to be discussed.  They're certainly not

5    going to be discussed in detail by the Government's witness

6    today.  And to be clear, the focus of the testimony today will

7    be the contention that there is no probable cause for the

8    warrantless arrest.  And that's what the witness today is

9    going to be testifying about.

10       I don't think it would be proper, Your Honor, for there

11   to be questions about the -- detailed questions about the

12   search warrant in the case.  I just want to be sure --

13           **THE COURT:**  Well, if they're challenging -- I mean,

14   I look at the face of the warrant itself and determine whether

15   or not probable cause exists.  And I don't know whether or not

16   I need to take any testimony, unless there's somehow some sort

17   of Frank's challenge.

18           **MR. RILEY:**  I agree with Your Honor.

19           **THE COURT:**  Right.

20           **MR. RILEY:**  I absolutely agree with you.

21           **THE COURT:**  You know, so I'll hear from counsel for

22   the defense.  Is there a facial challenge to the warrant or

23   there's some material omission or misrepresentation that was

24   contained within the warrant that would necessitate a Frank's

25   hearing?

1          **MR. MANN:**  I don't think that a Frank's hearing is

2     necessary.  In our review of the warrant there was one part

3     that was rather interesting to me.  Normally when you look at

4     -- you know, warrants have the application with an affidavit

5     followed by --

6          **THE COURT:**  Which warrant are we talking about?

7     There's the house, the cars, the cell phones.

8          **MR. MANN:**  Right.  The cell phone comes later, so I

9     think that there's -- so the error that I'm going to talk

10    about I think was somewhat corrected as it comes later.  So

11    the search warrant as to the house and as to the car that were

12    taken out on December 23rd.

13        And one interesting thing that I found and I will admit

14    that in looking through case law this might be something of

15    first impression, but when you normally look at search

16    warrants, there's a section that includes the affiant's

17    expertise.  So when he goes -- so when he goes to the neutral

18    magistrate they say, this is how I know this information to be

19    absolutely not necessarily correct, but through my training

20    and experience I can at least raise my hand and say this is

21    how -- in those two warrants there is no section in regards to

22    an expertise.

23        So my argument would be that the application should not

24    stand because -- I guess because there is no expertise listed.

25    When the officer goes before the neutral magistrate and says,

1    I know this to be true and this is how I know it through my

2    training, that part is not there, then really the whole

3    application should fall for the warrant.

4         **THE COURT:**  Well, I mean, it seems to me that you

5    don't need to be an expert to put forth probable cause.  I

6    mean, and specifically it says December 23, 2020 they were

7    dispatched to a robbery at the AT&T store.  They're advised

8    that there were three black males armed with handguns when

9    they entered the store.  There's a description of what they

10   were wearing and then the GPS tracker was activated and one of

11   the items taken.  An aviation unit came out, tracked where the

12   GPS tracker was.  The GPS tracker stopped outside the house.

13   They observed a light colored SUV in the rear of the yard.

14   Three individuals get out of the car.  They're wearing similar

15   outfits as the people who were engaged or described engaging

16   in the robbery.  They were carrying items from the vehicle

17   into the house and they remained in the house as police

18   surveilled them.  And it was a violent armed robbery with

19   firearms and the three suspects matching the description

20   entered into the house.

21        I'll hear from Mr. Riley,  but it seems to me you

22   don't need to be an expert witness to --

23        **MR. MANN:**  And I will admit that this is more of an

24   on view than if you say an investigation into a drug operation

25   that would lead to a search and seizure of a house or needing

1   expertise and expertise is warranted for the warrant in that

2   situation.  So this is more of an on view which I guess when

3   it comes around to if the police had all of this information,

4   why did they need a search and seizure warrant in the first

5   place?  Which I'm not sure why they went and got that anyway,

6   but since they did, it should have been done properly and the

7   fact --

8           **THE COURT:**  Because then the burden would have been

9   on the other --

10          **MR. MANN:**  Well, maybe so.  So --

11          **THE COURT:**  Okay.

12          **MR. MANN:**  But that's the point that I was trying to

13   make.  I think the application is short because it's missing

14   that section that we normally see in all warrants.

15          **THE COURT:**  And anything else you want to add on

16   that, Mr. Walsh-Little?

17          **MR. WALSH-LITTLE:**  No, Your Honor.

18          **THE COURT:**  I'll hear from you, Mr. Riley, but it

19   seems to me you don't need an expert.

20          **MR. RILEY:**  I agree with Your Honor.  And the

21   applications are short because the robbery happened at

22   approximately 1:37, called the police, 1:45.  Warrant for the

23   house authorized just after 3 p.m. Warrant for the Kia vehicle

24   authorized just before 3:30 p.m. Law enforcement officer doing

25   his job working as quickly as he can to get these warrants

1    authorized.  Your Honor is right, there's no need for him to

2    set out his expertise with respect to anything.  He is

3    relaying the facts as understood by law enforcement as they

4    are doing their jobs.

5         These warrants are amply supported by probable cause.

6    Even if they weren't, there's been no contention, no way that

7    the Good Faith Exception would not apply in this case.  The

8    motion should be denied.

9         I would note as well it could be denied for another

10   reason, Your Honor.  There's been zero showing by either

11   defendant that they have a reasonable expectation of privacy

12   in 5724 Calverton Street, in the Kia vehicle, in the Dodge

13   Caravan that was also searched.  No affidavit, no declaration

14   and I don't think there's going to be testimony today either,

15   Your Honor.

16        So the motion could be denied at the outset on the basis

17   of lack of standing and it could be denied also because the

18   warrants are -- all the warrants in this case are amply

19   supported by probable cause.

20            **THE COURT:**  I didn't hear from you, Mr. Mann on

21   this, but is there a standing or what's the counter to the

22   standing argument?

23            **MR. MANN:**  I'll submit, Judge.

24            **THE COURT:**  All right, very well.  And with regard

25   to the balance of the warrants on the phones and the Kia

1    vehicle itself, I discussed the one for the house.  I think

2    the probable cause is the same for the Kia vehicle.  I note

3    that the phones, there was a doubling down based upon the

4    evidence that was seized inside the vehicle, as well as inside

5    the home.  Is there anything additional to add, Mr.

6    Walsh-Little, or Mr. Mann?

7            **MR. WALSH-LITTLE:**  Not for Mr. Herring, Your Honor.

8            **MR. MANN:**  Not from us, Judge.  Thank you.

9            **THE COURT:**  Pending before the Court is a Motion to

10   Suppress Tangible Evidence arising out of search and seizure

11   warrants issued on December 23, 2020 and thereafter related to

12   items seized at a robbery at an AT&T phone store located on

13   10215 Reisterstown Road, Owings Mills, Maryland.  The searches

14   were of a house, of a Kia Soul vehicle, of a minivan, as well

15   as cell phones that were obtained during the course of the

16   search.

17       A review of the initial search warrant reveals more than

18   ample probable cause which the Court recited during arguments

19   supporting the search of the home, as well as the vehicle

20   inside the home, as well as the vehicle.  Multiple pieces of

21   evidence and contraband were retrieved associated with the

22   robbery, including keys and a lanyard of one of the victims,

23   firearms, ammunition, cell phones, the cell phones themselves

24   that were taken, including the one with GPS tracking device

25   that allowed law enforcement to locate the location of the

1      stolen cell phones.

2          In addition, the individuals who were observed on the

3      surveillance video robbing the store, those descriptions

4      matched perfectly to the description of the individuals

5      exiting the light colored SUV and going into the house

6      carrying a bag from the vehicle.

7          Further, the timing of the entry into the home subsequent

8      to the robbery of the store is consistent with the suspect

9      individuals being involved within the robbery.

10          Further, I find that the defendants do not have standing

11      to contest the search of the vehicle or the home and have not

12      demonstrated reasonable expectation of privacy with regard to

13      the places that were searched.

14          The search warrants related to the cell phones that were,

15      indeed, seized is -- that probable cause is more than ample.

16      It's based indeed upon evidence that was secured subsequent --

17      incriminating evidence that was secured subsequent to the

18      initial searches.  And so as a result, the motions will be

19      denied.

20          Further, even assuming that there was no probable cause,

21      the Good Faith Exception to the warrant requirement would end

22      up being satisfied.  As a result, ECF 71 will be denied.

23          With regard to ECF 73, that Motion to Seek 404(b)

24      Evidence, that's denied without prejudice.

25          ECF 70 will be denied, as well, as moot.

1          And then finally, we're left with ECF 72 which is the

2     Motion to Sever counts.  I'll be more than happy to hear from

3     anyone on that particular issue.  Is that Mr. Jones's or Mr.

4     Herring's?

5                    **MR. MANN:**  That was Mr. Jones's motion, Judge.

6                    **THE COURT:**  Okay.

7                    **MR. MANN:**  And I think the Court in reviewing my

8     motion, I don't have a lot more to add than what was said in

9     there, but I think it is -- I want to make clear to the Court

10    that the evidence from the December 23rd robbery is ominous

11    and this is how this enterprise ended is with the tracker and

12    then they recovered the three individuals out of the home.

13         But the evidence as to the December 17th solely consists

14    of video and a few witness statements, but no identification.

15    So I think what the Government is trying to do is sort of take

16    the December 23rd evidence and say, there's so much here and

17    it's a cell phone store, therefore an earlier cell phone store

18    also must have been done by the same people.

19         Now I will submit that a Dodge Caravan was found, but

20    other than that, there is zero evidence recovered from the

21    scene or linking these individuals to that December 17th

22    robbery.  It's sort of trying to cram that information on top

23    of it.  And I do believe that it would create a serious risk

24    of prejudice from having these two counts tried together.

25         I certainly understand that this may split this case in

1    half for Mr. Jones and cause us to have two trials, but I do

2    believe that it would be a clear and substantial prejudice to

3    try him on both counts and would create for the jury sort of

4    this unfair carryover of guilt from one incident to the second

5    incident. And so I will rest on that and what I wrote in my

6    motion, Judge.

7            **THE COURT:**  Thank you.  Mr. Riley, would you like to

8    address that?

9            **MR. RILEY:**  Very briefly, Your Honor.  And I think

10   the Government's response, written response summarizes what

11   I'm going to say, puts in a little bit more detail than what

12   I'm going to say here which is I think that the suggestion

13   that besides the Dodge Caravan there is little or no sort of

14   factual overlap between the two robberies, the December 17th

15   robbery and December 23rd robbery is just wrong.  And let me

16   just talk a little bit about what was found during the search

17   of the December 23rd robbery.

18       The robbers who robbed the AT&T store, one of the robbers

19   was wearing Helly Hansen snow pants, as well as a sweatshirt.

20   And we believe that person was Mr. Jones.

21       During the December 17th robbery, one of the robbers was

22   wearing Helly Hansen snow pants and the Government understands

23   the same sweatshirt, just turned inside out.  So there's a

24   factual similarity.

25       As Your Honor noted, there was a minivan on the property

1    at 5724 Calverton Street.  Suspect vehicle from the December

2    17th robbery, maroon in color, potential Dodge minivan.  There

3    is a Reebok fannypack that was held by as the Government

4    understands it, by Mr. Herring during the December 17th cell

5    phone store robbery.  There was a Reebok fannypack

6    substantially identical in appearance that was held by I

7    believe it was Mr. Jones during the December 23rd robbery.

8    That Reebok fannypack was found inside 5724 Calverton Street.

9         During the December 17th robbery, the Government

10   understands that Mr. Herring was wearing unique, distinct,

11   multi-colored New Balance sneakers.  The Government

12   understands that those sneakers were also worn during the

13   December 23, 2020 robbery.  Indeed these sneakers were taken

14   off of Mr. Herring's feet after he was arrested.

15        I would note too, Your Honor, that the MO of these two

16   robberies is essentially the same.  Two armed individuals in

17   connection with the December 17th robbery and three in

18   connection with the December 23rd robbery entered the cell

19   phone stores, forced the employees in the back to unload large

20   numbers of stolen cellular devices and they leave the store.

21        **THE COURT:**  Wasn't a license plate for the Kia found

22   underneath the rear passenger tire of the Dodge minivan?

23        **MR. RILEY:**  Yes, Your Honor.  So the license plate

24   that was -- let me make sure I get this right, Your Honor.

25   The license plate that was spotted on surveillance video after

1    the December 23rd robbery was found on the rear tire of the

2    Dodge Caravan.  The plate that actually belonged on the Kia

3    was found tucked behind an air conditioner unit at 5724

4    Calverton Street.

5         So Your Honor is right.  So, I mean, all of this is to

6    say, Your Honor, that cases are properly joined under Rule 8.

7    The defense can't really articulate the substantial risk of

8    prejudice.  The Government cited the cases that discuss

9    prejudice and that have found there's no prejudice in

10   factually analogous circumstances to those here.  And the

11   Government would ask the Court to deny the Motion to Sever.

12        **THE COURT:**  Thank you.  Pending before the Court is

13   a Motion to Sever counts, that's ECF 72.  The Court has

14   entertained argument and pursuant to Rule 8 I believe the two

15   counts are properly joined.  Indeed, there are certainly

16   offenses of the same or similar character that pointed out by

17   the Government they certainly constitute part of a common

18   scheme or plan, as well.  There were robberies of a cell phone

19   store.  Firearms were brandished.  Victims were threatened.

20   The defendants were wearing similar, if not the same clothing.

21   The mode of operandi was the same.  In other words, an

22   individual would enter the store, pretend to be a customer,

23   browse around.  Co-defendants would enter the store, announce

24   a robbery, brandish firearms, rob the safe and register,

25   drive away.  Place a bag of items inside a vehicle, a stolen

1    vehicle and make their getaway.  The getaway was to -- at

2    least there's evidence of it being at a similar location.  The

3    evidence of the December 23rd getaway vehicle was found in the

4    minivan which was the suspected vehicle of the third one.  By

5    "in" I mean in a wheel well, in a space or area.

6         I do believe that there will be duplicate witnesses and

7    separate trials would certainly be a waste of judicial

8    resources.  Separating and distinguishing the two counts for

9    the purposes of jury deliberations can be taken care of

10   satisfactorily through instructions.  I do not believe that

11   there is any prejudice certainly under Rule 14.  I don't

12   believe there's any serious risk that a joint trial would

13   prevent the jury from making a reliable judgment about the

14   guilt or innocence regarding any one of those counts.

15        Certainly the case law is fairly clear that you're not

16   entitled to a severance just because your chances of acquittal

17   are better if the cases are severed.  While I certainly

18   appreciate defense argument that their evidence appears to be

19   more voluminous in the second robbery than in the first,

20   there is a sufficient overlap which I believe will be

21   important and certainly makes the two crimes inextricably

22   intertwined. So based upon this I'm going to go ahead and deny

23   the Motion for Severance.

24        Are there any other motions that need to be disposed of

25   at this time, Mr. Walsh-Little?

1      **MR. WALSH-LITTLE:**  No, Your Honor.  Not on behalf of

2  Mr. Herring, Your Honor.

3          **THE COURT:**  Mr. Mann?

4          **MR. MANN:**  Not from us, Judge, thank you.

5          **THE COURT:**  Are there any other matters, Mr. Riley,

6  that we can handle productively before we conclude?

7          **MR. RILEY:**  Your Honor, there was the contention by

8  Mr. Jones that the warrantless arrest in this case was not

9  supported by probable cause.  The Government is prepared to

10  have a witness testify as to the abundant probable cause in

11  this case.  I don't know if there will be a stipulation that

12  they agree that the facts set out by the Government are

13  accurate, to obviate the need for testimony, but the

14  Government is certainly prepared to proceed to address that

15  question.

16          **THE COURT:**  Right.  I'll hear from Mr. Walsh-Little

17  or Mr. -- well, it's with regard to the warrantless arrest of

18  Mr. Herring; is that correct?

19          **MR. RILEY:**  Warrantless arrest of Mr. Jones.

20  Counsel for Mr. Herring did not join in on that motion.

21          **THE COURT:**  Right.  Mr. Mann, based upon the Court's

22  findings of sufficient probable cause related to the search

23  and seizure warrants and the fact that there appears to be

24  evidence at least in one of the warrants that there's hiding

25  in the ceiling, et cetera, do you wish to have me take

1    testimony on whether or not probable cause existed for the

2    warrantless arrest?

3              **MR. MANN:**  No, Judge.  I'll submit on what I wrote

4    and what the Court has already found.

5              **THE COURT:**  All right, well having previously

6    found -- yes, Mr. Riley?

7              **MR. RILEY:**  I'm slightly concerned that we may need

8    some -- either a stipulation or an agreed upon set of facts.

9    I mean, I understand -- and I don't want to waste Your Honor's

10   time.  Perhaps out of an abundance of caution we could just

11   call the witness and I'll try to work through his testimony

12   very quickly, understanding that Your Honor has already ruled

13   with respect to the warrants.

14             **THE COURT:**  With regard to the search warrants.

15   That's fine.  Mr. Mann, I know that you agreed to stipulate

16   here.  I mean, honestly, this is almost a matter that could be

17   taken up from trial testimony if we heard it during the course

18   of the trial, but I will defer.  Mr. Mann, do you wish to hear

19   testimony on PC on your client or --

20             **MR. MANN:**  Um, I guess if we do have to go to trial,

21   I guess the point being that if we -- if Your Honor does not

22   hear enough evidence at trial that would lead you to believe

23   that there is probable cause to make the arrest I can make a

24   motion at that point.

25             **THE COURT:**  Yes.  Mr. Riley?

1          **MR. RILEY:**  Judge, if I understand, I mean, perhaps

2     the solution might be for that aspect of the Motion to

3     Suppress Tangible Evidence to be withdrawn or denied without

4     prejudice to renewal or just the Court can take it under

5     advisement and counsel can move again at trial.

6          **THE COURT:**  I'll tell you what, what I will do, Mr.

7     Mann, if you could, it seems to me -- I've got no problem

8     handling it either way.  It can either be withdrawn, I can

9     deny it without prejudice.  Your client can feel free to raise

10    it again during the course of the trial either via sidebar or

11    otherwise during the -- after the witness ends up testifying

12    and you subjected the witness to cross-examination.

13         **MR. MANN:**  That sounds fine to me then, Judge.  I

14    think we could take it under advisement now and revisit, as

15    necessary, at trial.

16         **THE COURT:**  Well, I will allow you to -- I'll take

17    it under advisement, but I'll allow you to raise it at trial

18    and I would assume you're going to -- I'm going to leave it to

19    you to raise it.  So in other words, if you choose not to

20    raise it, then, you know, I'm presuming that you're

21    withdrawing it.

22         **MR. MANN:**  Yes, Judge.  Understood.

23         **THE COURT:**  Mr. Riley, is that acceptable?

24         **MR. RILEY:**  Yes.  Thank you, Your Honor.

25         **THE COURT:** Is there anything else, Mr. Riley, that

1   we can productively handle before we conclude?

2           **MR. RILEY:**  No thank you, Your Honor.

3           **THE COURT:**  I don't know when we're set for trial,

4   but I do believe we have a trial date.

5           **MR. RILEY:**  Correct, Your Honor.  March 6th.

6           **THE COURT:**  If something comes up between now and

7   March 6th, just simply -- especially sooner rather than later,

8   just simply consult with one another, contact chambers and let

9   me know the current status of the case before we end up

10  pulling in jurors.

11          **MR. RILEY:**  Yes, Your Honor.

12          **THE COURT:**  All right.  Thank you very much.  Take

13  care.

14              **(Proceedings concluded at 11:13 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

1   **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4

5         I, Nadine M. Bachmann, Registered Merit Reporter and

6   Certified Realtime Reporter, in and for the United States

7   District Court for the District of Maryland, do hereby

8   certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

9   true and correct transcript of the stenographically-reported

10  proceedings held in the above-entitled matter and that the

11  transcript page format is in conformance with the regulations

12  of the Judicial Conference of the United States.

13

14                          Dated this 26th day of October, 2022.

15

16

17         _____
                   NADINE M. GAZIC  RMR, CRR
18                 FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25

## 1

**100** [1] - 1:20
**101** [2] - 1:19, 1:24
**1014** [1] - 1:16
**10215** [1] - 12:13
**10:38** [1] - 2:1
**11:13** [1] - 22:14
**14** [1] - 18:11
**17th** [8] - 14:13, 14:21, 15:14, 15:21, 16:2, 16:4, 16:9, 16:17
**1:37** [1] - 10:22
**1:45** [1] - 10:22

## 2

**2020** [3] - 9:6, 12:11, 16:13
**2022** [2] - 1:8, 23:14
**21-120** [1] - 2:4
**21201** [2] - 1:14, 1:25
**21211** [1] - 1:17
**21286** [1] - 1:20
**23** [4] - 1:8, 9:6, 12:11, 16:13
**23rd** [9] - 8:12, 14:10, 14:16, 15:15, 15:17, 16:7, 16:18, 17:1, 18:3
**26th** [1] - 23:14
**28** [1] - 23:8

## 3

**3** [1] - 10:23
**36** [1] - 1:13
**36th** [1] - 1:16
**3:30** [1] - 10:24

## 4

**404** [1] - 6:5
**404(b** [4] - 3:14, 6:3, 6:10, 13:23
**410-962-4753** [1] - 1:25
**4th** [1] - 1:24

## 5

**5724** [4] - 11:12, 16:1, 16:8, 17:3

## 6

**6th** [2] - 22:5, 22:7

## 7

**70** [2] - 3:25, 13:25
**71** [2] - 6:21, 13:22
**72** [2] - 14:1, 17:13
**73** [1] - 13:23
**753** [1] - 23:8
**7A** [1] - 1:8

## 8

**8** [2] - 17:6, 17:14

## A

**a.m** [2] - 2:1, 22:14
**above-entitled** [1] - 23:10
**absolutely** [2] - 7:20, 8:19
**abundance** [1] - 20:10
**abundant** [1] - 19:10
**accept** [1] - 2:10
**acceptable** [1] - 21:23
**according** [1] - 4:1
**accurate** [1] - 19:13
**acquittal** [1] - 18:16
**activated** [1] - 9:10
**add** [4] - 5:17, 10:15, 12:5, 14:8
**addition** [1] - 13:2
**additional** [2] - 7:1, 12:5
**address** [2] - 15:8, 19:14
**admit** [2] - 8:13, 9:23
**advised** [3] - 4:5, 4:8, 9:7
**advisement** [3] - 21:5, 21:14, 21:17
**affiant's** [1] - 3:15
**affidavit** [2] - 8:4, 11:13
**Agent** [1] - 1:22
**agree** [4] - 7:18, 7:20, 10:20, 19:12
**agreed** [2] - 20:8, 20:15
**ahead** [4] - 2:20, 3:1, 3:8, 18:22
**air** [1] - 17:3
**allegedly** [1] - 4:23
**allow** [2] - 21:16, 21:17
**allowed** [1] - 12:25
**almost** [1] - 20:16
**AMERICA** [1] - 1:3
**ammunition** [1] - 12:23
**ample** [2] - 12:18,

13:15
**amply** [2] - 11:5, 11:18
**analogous** [1] - 17:10
**announce** [1] - 17:23
**ANTWAUN** [1] - 1:5
**Antwaun** [1] - 1:15
**anyway** [1] - 10:5
**apart** [1] - 5:21
**apologize** [1] - 2:9
**appearance** [1] - 16:6
**application** [4] - 8:4, 8:23, 9:3, 10:13
**applications** [1] - 10:21
**apply** [1] - 11:7
**appreciate** [2] - 2:14, 18:18
**area** [1] - 18:5
**argue** [1] - 6:4
**argument** [4] - 8:23, 11:22, 17:14, 18:18
**arguments** [2] - 7:1, 12:18
**arising** [1] - 12:10
**armed** [3] - 9:8, 9:18, 16:16
**arrest** [9] - 4:2, 4:25, 6:24, 7:8, 9:8, 19:17, 19:19, 20:2, 20:23
**arrested** [1] - 16:14
**articulate** [1] - 17:7
**aspect** [1] - 21:2
**assistant** [1] - 2:4
**Assistant** [1] - 1:13
**associated** [1] - 12:21
**assume** [1] - 21:18
**assuming** [1] - 13:20
**AT&T** [3] - 9:7, 12:12, 15:18
**attachments** [1] - 3:15
**Attorneys** [2] - 1:13, 2:4
**Aubin** [2] - 1:12, 2:5
**authorized** [3] - 10:23, 10:24, 11:1
**Avenue** [1] - 1:19
**aviation** [1] - 9:11

## B

**Bachmann** [1] - 1:23, 23:5
**bag** [1] - 13:6, 17:25
**Balance** [1] - 16:11
**balance** [1] - 11:25
**Baltimore** [5] - 1:9, 1:14, 1:17, 1:25, 2:7
**based** [4] - 12:3, 13:16, 18:22, 19:21

**basis** [1] - 11:16
**BEFORE** [1] - 1:10
**behalf** [5] - 2:5, 2:18, 3:12, 3:13, 19:11
**behind** [1] - 17:3
**belonged** [1] - 17:12
**better** [1] - 18:17
**between** [2] - 15:14, 22:6
**bit** [2] - 15:11, 15:16
**black** [1] - 9:8
**boilerplate** [1] - 6:25
**booking** [2] - 4:4, 5:22
**brandish** [1] - 17:24
**brandished** [1] - 17:19
**briefly** [1] - 15:9
**browse** [1] - 17:23
**burden** [1] - 10:8

## C

**Calverton** [4] - 11:12, 16:1, 16:8, 17:4
**car** [2] - 8:11, 9:14
**Caravan** [4] - 11:13, 14:19, 15:13, 17:2
**care** [2] - 18:9, 22:13
**carrying** [2] - 9:16, 13:6
**carryover** [1] - 15:4
**cars** [1] - 8:7
**CASE** [1] - 1:4
**case** [10] - 2:3, 7:12, 8:14, 11:7, 11:18, 14:25, 18:15, 19:8, 19:11, 22:9
**cases** [3] - 17:6, 17:8, 18:17
**caution** [1] - 20:10
**ceiling** [1] - 19:25
**cell** [14] - 5:2, 5:3, 8:7, 8:8, 12:15, 12:23, 13:1, 13:14, 14:17, 16:4, 16:18, 17:18
**cellular** [1] - 16:20
**certainly** [10] - 7:4, 14:25, 17:15, 17:17, 18:7, 18:11, 18:15, 18:17, 18:21, 19:14
**CERTIFICATE** [1] - 23:1
**Certified** [1] - 23:6
**certify** [1] - 23:8
**cetera** [1] - 19:25
**challenge** [2] - 7:17, 7:22
**challenged** [1] - 6:23
**challenging** [1] - 7:13
**chambers** [1] - 22:8
**chances** [1] - 18:16

**character** [1] - 17:16
**Charles** [1] - 1:13
**Chesapeake** [1] - 1:19
**choose** [1] - 21:19
**circuit** [1] - 6:2
**circumstances** [1] - 17:10
**cited** [1] - 17:8
**clear** [4] - 7:6, 14:9, 15:2, 18:15
**client** [3] - 5:7, 20:19, 21:9
**closer** [2] - 6:7, 6:9
**clothing** [1] - 17:20
**co** [1] - 17:23
**co-defendants** [1] - 17:23
**color** [1] - 16:2
**colored** [3] - 9:13, 13:5, 16:11
**commenced** [1] - 2:1
**common** [1] - 17:17
**components** [1] - 6:22
**concerned** [1] - 20:7
**conclude** [2] - 19:6, 22:1
**concluded** [1] - 22:14
**conditioner** [1] - 17:3
**conference** [1] - 6:16
**Conference** [1] - 23:12
**conformance** [1] - 23:11
**connection** [2] - 16:17, 16:18
**consistent** [1] - 13:8
**consists** [1] - 14:13
**constitute** [1] - 17:17
**consult** [1] - 22:8
**contact** [1] - 22:8
**contained** [1] - 7:24
**contention** [4] - 6:23, 7:7, 11:6, 19:7
**contest** [1] - 13:11
**contraband** [1] - 12:21
**conversation** [1] - 6:8
**correct** [5] - 5:20, 8:19, 19:18, 22:5, 23:9
**corrected** [1] - 8:10
**counsel** [3] - 2:6, 7:21, 21:5
**Counsel** [1] - 19:20
**counsel's** [1] - 7:3
**counter** [1] - 11:21
**counts** [8] - 3:13, 14:2, 14:24, 15:3, 17:13, 17:15, 18:8,

18:14
**County** [1] - 2:7
**course** [3] - 12:15, 20:17, 21:10
**COURT** [46] - 1:1, 2:12, 2:15, 2:19, 2:25, 3:23, 4:18, 5:9, 5:12, 5:14, 5:16, 5:25, 6:12, 6:15, 6:18, 7:13, 7:19, 7:21, 8:6, 9:4, 10:8, 10:11, 10:15, 10:18, 11:20, 11:24, 12:9, 14:6, 15:7, 16:21, 17:12, 19:3, 19:5, 19:16, 19:21, 20:5, 20:14, 20:25, 21:6, 21:16, 21:23, 21:25, 22:3, 22:6, 22:12, 23:18
**Court** [11] - 1:24, 12:9, 12:18, 14:7, 14:9, 17:11, 17:12, 17:13, 20:4, 21:4, 23:7
**Court's** [2] - 3:3, 19:21
**Courtroom** [1] - 1:8
**courtroom** [1] - 3:4
**cram** [1] - 14:22
**create** [2] - 14:23, 15:3
**crimes** [1] - 18:21
**CRIMINAL** [1] - 1:4
**cross** [1] - 21:12
**cross-examination** [1] - 21:12
**CRR** [2] - 1:23, 23:17
**current** [1] - 22:9
**customer** [1] - 17:22

**D**

**date** [1] - 22:4
**Dated** [1] - 23:14
**David** [3] - 1:15, 1:16, 2:17
**December** [20] - 8:12, 9:6, 12:11, 14:10, 14:13, 14:16, 14:21, 15:14, 15:15, 15:17, 15:21, 16:1, 16:4, 16:7, 16:9, 16:13, 16:17, 16:18, 17:1, 18:3
**decided** [1] - 4:17
**declaration** [1] - 11:13
**deep** [1] - 2:12
**Defendant** [2] - 1:15, 1:18
**defendant** [1] - 11:11
**defendants** [3] - 13:10, 17:20, 17:23

**Defendants** [1] - 1:6
**defense** [4] - 7:1, 7:22, 17:7, 18:18
**defer** [1] - 20:18
**deliberations** [1] - 18:9
**demonstrated** [1] - 13:12
**denied** [11] - 4:18, 5:23, 11:8, 11:9, 11:16, 11:17, 13:19, 13:22, 13:24, 13:25, 21:3
**deny** [4] - 6:13, 7:11, 18:22, 21:9
**Department** [1] - 2:7
**derivative** [1] - 4:21
**described** [1] - 9:15
**description** [3] - 9:9, 9:19, 13:4
**descriptions** [1] - 13:3
**detail** [2] - 7:5, 15:11
**detailed** [1] - 7:11
**Detective** [1] - 2:6
**determine** [1] - 7:14
**device** [1] - 12:24
**devices** [1] - 16:20
**discuss** [1] - 17:8
**discussed** [4] - 4:12, 7:4, 7:5, 12:1
**discussion** [2] - 3:19, 6:3
**dispatched** [1] - 9:7
**disposed** [1] - 18:24
**distinct** [1] - 16:10
**distinguishing** [1] - 18:8
**District** [2] - 23:7
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**Dodge** [6] - 11:12, 14:19, 15:13, 16:2, 16:22, 17:2
**done** [2] - 10:6, 14:18
**DONTE** [1] - 1:5
**Donte** [3] - 1:15, 2:3, 2:18
**doubling** [1] - 12:3
**down** [1] - 12:3
**drive** [1] - 17:25
**drug** [1] - 9:24
**duplicate** [1] - 18:6
**during** [11] - 12:15, 12:18, 15:16, 15:21, 16:4, 16:7, 16:9, 16:12, 20:17, 21:10, 21:11

**E**

**ECF** [7] - 3:25, 6:21, 13:22, 13:23, 13:25, 14:1, 17:13
**effect** [1] - 4:9
**either** [6] - 11:10, 11:14, 20:8, 21:8, 21:10
**employees** [1] - 16:19
**end** [2] - 13:21, 22:9
**ended** [1] - 14:11
**ends** [1] - 21:11
**enforcement** [3] - 10:24, 11:3, 12:25
**engaged** [2] - 3:5, 3:18, 9:15
**engaging** [2] - 3:7, 9:15
**enter** [2] - 17:22, 17:23
**entered** [3] - 9:9, 9:20, 16:18
**enterprise** [1] - 14:11
**entertained** [1] - 17:14
**entitled** [2] - 18:16, 23:10
**entry** [1] - 13:7
**error** [1] - 8:9
**especially** [1] - 22:7
**Esquire** [4] - 1:12, 1:12, 1:15, 1:18
**essentially** [1] - 16:16
**et** [1] - 19:25
**evidence** [17] - 4:21, 4:25, 5:10, 6:21, 12:4, 12:21, 13:16, 13:17, 14:10, 14:13, 14:16, 14:20, 18:2, 18:3, 18:18, 19:24, 20:22
**Evidence** [6] - 3:12, 3:14, 4:20, 12:10, 13:24, 21:3
**examination** [1] - 21:12
**Exception** [2] - 11:7, 13:21
**existed** [1] - 20:1
**exists** [1] - 7:15
**exiting** [1] - 13:5
**expectation** [2] - 11:11, 13:12
**experience** [1] - 8:20
**expert** [3] - 9:5, 9:22, 10:19
**expertise** [6] - 8:17, 8:22, 8:24, 10:1, 11:2

**F**

**face** [1] - 7:14
**facial** [1] - 7:22
**fact** [2] - 10:7, 19:23
**facts** [3] - 11:3, 19:12, 20:8
**factual** [2] - 15:14, 15:24
**factually** [1] - 17:10
**fairly** [1] - 18:15
**Faith** [2] - 11:7, 13:21
**fall** [2] - 2:12, 9:3
**fannypack** [3] - 16:3, 16:5, 16:8
**FBI** [2] - 1:22, 2:6
**federal** [1] - 5:3
**Federal** [1] - 1:24
**FEDERAL** [1] - 23:18
**feet** [1] - 16:14
**few** [2] - 3:19, 14:14
**file** [1] - 6:11
**filed** [3] - 3:11, 4:21, 6:21
**final** [1] - 5:3
**finally** [1] - 14:1
**findings** [1] - 19:22
**fine** [4] - 5:25, 6:12, 20:15, 21:13
**firearms** [4] - 9:19, 12:23, 17:19, 17:24
**first** [3] - 8:15, 10:4, 18:19
**Floor** [1] - 1:24
**focus** [1] - 7:6
**followed** [1] - 8:5
**FOR** [1] - 1:1
**forced** [1] - 16:19
**foregoing** [1] - 23:8
**format** [1] - 23:11
**forth** [2] - 6:6, 9:5
**Frank's** [3] - 7:17, 7:24, 8:1
**free** [1] - 21:9
**Friday** [1] - 1:8
**fully** [2] - 3:6

**G**

**GAZIC** [1] - 23:17
**GEORGE** [1] - 1:10
**getaway** [3] - 18:1, 18:3
**GLR** [1] - 2:4
**GLR-21-0120** [1] - 1:4
**Government** [18] - 2:5, 3:21, 4:9, 4:22, 5:16, 5:20, 6:6, 14:15, 15:22, 16:3,

16:9, 16:11, 17:8, 17:11, 17:17, 19:9, 19:12, 19:14
**Government's** [2] - 7:5, 15:10
**GPS** [4] - 9:10, 9:12, 12:24
**granted** [1] - 5:25
**guess** [4] - 8:24, 10:2, 20:20, 20:21
**guilt** [2] - 15:4, 18:14

**H**

**half** [1] - 15:1
**hand** [1] - 8:20
**handguns** [1] - 9:8
**handle** [3] - 3:20, 19:6, 22:1
**handling** [1] - 21:8
**Hanlon** [2] - 1:22, 2:6
**Hansen** [3] - 15:19, 15:22
**happy** [1] - 14:2
**head** [1] - 3:1
**hear** [10] - 5:5, 5:14, 7:21, 9:21, 10:18, 11:20, 14:2, 19:16, 20:18, 20:22
**heard** [1] - 20:17
**Hearing** [1] - 1:9
**hearing** [6] - 2:8, 3:10, 3:18, 3:25, 7:25, 8:1
**held** [3] - 16:3, 16:6, 23:10
**Helly** [2] - 15:19, 15:22
**hereby** [1] - 23:7
**HERRING** [1] - 1:5
**Herring** [12] - 1:15, 2:3, 2:18, 2:19, 3:12, 4:1, 12:7, 16:4, 16:10, 19:2, 19:18, 19:20
**Herring's** [3] - 4:2, 14:4, 16:14
**hiding** [1] - 19:24
**home** [6] - 12:5, 12:19, 12:20, 13:7, 13:11, 14:12
**honestly** [1] - 20:16
**Honor** [34] - 2:2, 2:8, 2:17, 3:22, 4:15, 5:18, 5:20, 6:1, 6:19, 6:25, 7:10, 7:18, 10:17, 10:20, 11:1, 11:10, 11:15, 12:7, 15:9, 15:25, 16:15, 16:23, 16:24, 17:5, 17:6, 19:1, 19:2, 19:7, 20:12, 20:21,

21:24, 22:2, 22:5, 22:11
**Honor's** [1] - 20:9
**HONORABLE** [1] - 1:10
**house** [11] - 8:7, 8:11, 9:12, 9:17, 9:20, 9:25, 10:23, 12:1, 12:14, 13:5

**I**

**identical** [1] - 16:6
**identification** [1] - 14:14
**III** [1] - 1:10
**important** [1] - 18:21
**impression** [1] - 8:15
**improper** [1] - 6:24
**IN** [1] - 1:1
**incident** [2] - 15:4, 15:5
**includes** [1] - 8:16
**including** [4] - 3:11, 5:2, 12:22, 12:24
**incriminating** [1] - 13:17
**indeed** [4] - 13:15, 13:16, 16:13, 17:15
**indicated** [2] - 3:9, 3:24
**indicating** [1] - 4:10
**indication** [1] - 4:8
**individual** [1] - 17:22
**individuals** [7] - 9:14, 13:2, 13:4, 13:9, 14:12, 14:21, 16:16
**inextricably** [1] - 18:21
**information** [7] - 4:4, 5:22, 6:5, 6:10, 8:18, 10:3, 14:22
**initial** [2] - 12:17, 13:18
**innocence** [1] - 18:14
**inside** [6] - 12:4, 12:20, 15:23, 16:8, 17:25
**instructed** [2] - 4:5, 4:6
**instructions** [1] - 18:10
**intend** [2] - 4:11, 5:21
**intending** [1] - 4:23
**intends** [2] - 7:2
**interesting** [2] - 8:3, 8:13
**intertwined** [1] - 18:22
**interview** [1] - 5:23
**introduce** [1] - 5:21

**investigation** [1] - 9:24
**involved** [1] - 13:9
**issue** [1] - 14:3
**issued** [2] - 5:4, 12:11
**items** [4] - 9:11, 9:16, 12:12, 17:25
**itself** [2] - 7:14, 12:1

**J**

**Jeffrey** [1] - 1:18
**job** [1] - 10:25
**jobs** [1] - 11:4
**join** [1] - 19:20
**joined** [2] - 17:6, 17:15
**joint** [1] - 18:12
**JONES** [1] - 1:5
**Jones** [16] - 1:18, 2:3, 2:23, 2:25, 3:13, 4:22, 4:24, 5:20, 5:21, 6:21, 6:24, 15:1, 15:20, 16:7, 19:8, 19:19
**Jones's** [2] - 14:3, 14:5
**judge** [3] - 2:22, 5:7, 21:1
**Judge** [10] - 1:10, 5:15, 11:23, 12:8, 14:5, 15:6, 19:4, 20:3, 21:13, 21:22
**judgment** [1] - 18:13
**Judicial** [1] - 23:12
**judicial** [1] - 18:7
**jurors** [1] - 22:10
**jury** [3] - 15:3, 18:9, 18:13

**K**

**keys** [1] - 12:22
**Kia** [7] - 10:23, 11:12, 11:25, 12:2, 12:14, 16:21, 17:2

**L**

**lack** [1] - 11:17
**lanyard** [1] - 12:22
**large** [1] - 16:19
**law** [4] - 8:14, 11:3, 12:25, 18:15
**Law** [3] - 1:16, 1:19, 10:24
**lead** [2] - 9:25, 20:22
**least** [4] - 4:7, 8:20, 18:2, 19:24
**leave** [2] - 16:20,

21:18
**left** [4] - 2:18, 2:23, 6:20, 14:1
**LEVI** [1] - 1:10
**license** [3] - 16:21, 16:23, 16:25
**light** [3] - 7:3, 9:13, 13:5
**linking** [1] - 14:21
**listed** [1] - 8:24
**litigated** [1] - 6:16
**LITTLE** [5] - 2:17, 4:15, 10:17, 12:7, 19:1
**LLC** [1] - 1:16
**locate** [1] - 12:25
**located** [1] - 12:12
**location** [2] - 12:25, 18:2
**Lombard** [1] - 1:24
**look** [3] - 7:14, 8:3, 8:15
**looking** [1] - 8:14

**M**

**magistrate** [2] - 8:18, 8:25
**males** [1] - 9:8
**mann** [8] - 2:21, 5:5, 11:20, 12:6, 19:3, 20:15, 20:18, 21:7
**Mann** [4] - 1:18, 1:19, 2:22, 19:21
**MANN** [23] - 2:22, 2:23, 5:7, 5:11, 5:13, 5:15, 6:2, 6:14, 6:17, 8:1, 8:8, 9:23, 10:10, 10:12, 11:23, 12:8, 14:5, 14:7, 19:4, 20:3, 20:20, 21:13, 21:22
**March** [2] - 22:5, 22:7
**maroon** [1] - 16:2
**MARYLAND** [1] - 1:1
**Maryland** [7] - 1:9, 1:14, 1:17, 1:20, 1:25, 12:13, 23:7
**mask** [2] - 3:5, 3:8
**masked** [1] - 3:4
**masking** [1] - 3:3
**matched** [1] - 13:4
**matching** [1] - 9:19
**material** [1] - 7:23
**matter** [2] - 20:16, 23:10
**matters** [1] - 19:5
**mean** [8] - 7:13, 9:4, 9:6, 17:5, 18:5, 20:9, 20:16, 21:1

**Merit** [1] - 23:5
**message** [1] - 2:13
**Michael** [1] - 1:12
**might** [2] - 8:14, 21:2
**Mike** [1] - 2:5
**Mills** [1] - 12:13
**minivan** [5] - 12:14, 15:25, 16:2, 16:22, 18:4
**Miranda** [4] - 4:5, 4:6, 4:7, 4:10, 5:19
**misrepresentation** [1] - 7:23
**missing** [1] - 10:13
**MO** [1] - 16:15
**mode** [1] - 17:21
**moot** [2] - 5:24, 13:25
**morning** [4] - 2:2, 2:17, 2:19, 2:25
**Motion** [15] - 3:11, 3:12, 3:13, 3:25, 4:20, 5:19, 6:20, 12:9, 13:23, 14:2, 17:11, 17:13, 18:23, 21:2
**motion** [14] - 4:13, 5:11, 5:23, 6:11, 6:13, 6:22, 6:25, 11:8, 11:16, 14:5, 14:8, 15:6, 19:20, 20:24
**Motions** [1] - 1:9
**motions** [10] - 2:7, 3:9, 3:10, 3:15, 3:18, 3:20, 3:24, 13:18, 18:24
**move** [1] - 21:5
**MR** [46] - 2:2, 2:14, 2:17, 2:22, 3:21, 4:15, 5:7, 5:11, 5:13, 5:15, 5:18, 6:1, 6:2, 6:14, 6:17, 6:19, 7:18, 7:20, 8:1, 8:8, 9:23, 10:10, 10:12, 10:17, 10:20, 11:23, 12:7, 12:8, 14:5, 14:7, 15:9, 16:23, 19:1, 19:4, 19:7, 19:19, 20:3, 20:7, 20:20, 21:1, 21:13, 21:22, 21:24, 22:2, 22:5, 22:11
**multi** [1] - 16:11
**multi-colored** [1] - 16:11
**multiple** [1] - 12:20
**must** [1] - 14:18
**mute** [1] - 4:19

**N**

**NADINE** [1] - 23:17
**Nadine** [2] - 1:23, 23:5
**necessarily** [1] - 8:19
**necessary** [2] - 8:2, 21:15
**necessitate** [2] - 3:19, 7:24
**need** [10] - 3:17, 7:16, 9:5, 9:22, 10:4, 10:19, 11:1, 18:24, 19:13, 20:7
**needing** [1] - 9:25
**needs** [1] - 4:12
**neutral** [2] - 8:17, 8:25
**New** [1] - 16:11
**NO** [1] - 1:4
**normally** [3] - 8:3, 8:15, 10:14
**NORTHERN** [1] - 1:2
**note** [3] - 11:9, 12:2, 16:15
**noted** [2] - 5:25, 15:25
**nothing** [1] - 4:16
**number** [3] - 3:25, 6:21
**numbers** [1] - 16:20

**O**

**observed** [2] - 9:13, 13:2
**obtained** [1] - 12:15
**obviate** [1] - 19:13
**obviously** [1] - 4:16
**October** [1] - 23:14
**OF** [3] - 1:1, 1:3, 23:1
**offenses** [1] - 17:16
**Office** [1] - 1:16
**officer** [2] - 8:25, 10:24
**officers** [1] - 4:3
**Offices** [1] - 1:19
**OFFICIAL** [2] - 23:1, 23:18
**Official** [1] - 1:24
**ominous** [1] - 14:10
**omission** [1] - 7:23
**once** [2] - 6:7, 6:9
**one** [13] - 8:2, 8:13, 9:10, 12:1, 12:22, 12:24, 15:4, 15:18, 15:21, 18:4, 18:14, 19:24, 22:8
**operandi** [1] - 17:21
**operation** [1] - 9:24
**opportunity** [2] - 3:14, 5:1
**ordered** [1] - 4:6

**otherwise** [1] - 21:11
**outfits** [1] - 9:15
**outset** [2] - 5:23, 11:16
**outside** [1] - 9:12
**overlap** [2] - 15:14, 18:20
**Owings** [1] - 12:13

## P

**p.m** [2] - 10:23, 10:24
**page** [1] - 23:11
**pants** [2] - 15:19, 15:22
**part** [3] - 8:2, 9:2, 17:17
**particular** [1] - 14:3
**parties** [1] - 3:18
**passenger** [1] - 16:22
**Paul** [2] - 1:12, 2:4
**PC** [1] - 20:19
**pending** [2] - 12:9, 17:12
**people** [2] - 9:15, 14:18
**perfect** [1] - 6:17
**perfectly** [1] - 13:4
**perhaps** [2] - 20:10, 21:1
**person** [1] - 15:20
**Pete** [1] - 2:6
**Peter** [1] - 1:22
**phone** [9] - 5:2, 5:3, 8:8, 12:12, 14:17, 16:5, 16:19, 17:18
**phones** [8] - 8:7, 11:25, 12:3, 12:15, 12:23, 13:1, 13:14
**pick** [1] - 6:19
**pieces** [1] - 12:20
**place** [2] - 10:5, 17:25
**places** [1] - 13:13
**Plaintiff** [1] - 1:11
**plan** [1] - 17:18
**plate** [4] - 16:21, 16:23, 16:25, 17:2
**pleadings** [1] - 4:1
**pleasure** [3] - 2:15, 2:21, 2:22
**point** [5] - 6:4, 6:10, 10:12, 20:21, 20:24
**pointed** [1] - 17:16
**Police** [1] - 2:7
**police** [3] - 9:17, 10:3, 10:22
**policies** [1] - 3:3
**possibly** [2] - 4:24, 6:6
**post** [2] - 4:10, 5:19

**post-Miranda** [2] - 4:10, 5:19
**postponement** [1] - 3:19
**potential** [1] - 16:2
**potentially** [1] - 3:17
**prejudice** [10] - 6:13, 13:24, 14:24, 15:2, 17:8, 17:9, 18:11, 21:4, 21:9
**premature** [1] - 6:4
**prepared** [3] - 3:21, 19:9, 19:14
**Present** [1] - 1:21
**presuming** [1] - 21:20
**pretend** [1] - 17:22
**pretrial** [1] - 6:16
**prevent** [1] - 18:13
**previously** [1] - 20:5
**privacy** [2] - 11:11, 13:12
**probable** [14] - 7:7, 7:15, 9:5, 11:5, 11:19, 12:2, 12:18, 13:15, 13:20, 19:9, 19:10, 19:22, 20:1, 20:23
**problem** [1] - 21:7
**proceed** [2] - 3:22, 19:14
**proceedings** [2] - 22:14, 23:10
**Proceedings** [1] - 2:1
**productively** [2] - 19:6, 22:1
**proper** [1] - 7:10
**properly** [3] - 10:6, 17:6, 17:15
**property** [1] - 15:25
**provided** [2] - 4:4, 5:22
**pulling** [1] - 22:10
**purposes** [3] - 3:9, 3:24, 18:9
**pursuant** [3] - 3:3, 17:14, 23:8
**put** [2] - 6:6, 9:5
**puts** [1] - 15:11

## Q

**questions** [4] - 4:3, 7:2, 7:11
**quickly** [2] - 10:25, 20:12
**quite** [2] - 3:16, 7:1

## R

**raise** [5] - 8:20, 21:9,

21:17, 21:19, 21:20
**rather** [2] - 8:3, 22:7
**really** [2] - 9:2, 17:7
**Realtime** [1] - 23:6
**rear** [3] - 9:13, 16:22, 17:1
**reason** [1] - 11:10
**reasonable** [2] - 11:11, 13:12
**received** [2] - 3:16, 4:3
**recited** [1] - 12:18
**record** [2] - 4:14, 5:6
**recovered** [2] - 14:12, 14:20
**Reebok** [3] - 16:3, 16:5, 16:8
**refiling** [1] - 6:15
**regard** [6] - 4:13, 11:24, 13:12, 13:23, 19:17, 20:14
**regarding** [1] - 18:14
**regards** [2] - 6:11, 8:21
**register** [1] - 17:24
**Registered** [1] - 23:5
**regulations** [1] - 23:11
**Reisterstown** [1] - 12:13
**related** [5] - 4:3, 4:25, 12:11, 13:14, 19:22
**relaying** [1] - 11:3
**reliable** [1] - 18:13
**remain** [1] - 3:4
**remained** [1] - 9:17
**remove** [2] - 3:5, 3:8
**renewal** [1] - 21:4
**Reported** [1] - 1:23
**reported** [1] - 23:9
**REPORTER** [2] - 23:1, 23:18
**Reporter** [1] - 1:24, 23:5, 23:6
**representation** [1] - 7:3
**representing** [1] - 2:23
**requirement** [1] - 13:21
**resources** [1] - 18:8
**respect** [4] - 5:18, 6:20, 11:2, 20:13
**responded** [1] - 4:10
**response** [2] - 15:10
**responsibility** [1] - 2:10
**rest** [1] - 15:5
**result** [3] - 3:8, 13:18, 13:22
**retrieved** [1] - 12:21

**reveals** [1] - 12:17
**review** [4] - 3:14, 5:1, 8:2, 12:17
**reviewing** [1] - 14:7
**revisit** [1] - 21:14
**rights** [2] - 4:5, 4:9
**Riley** [2] - 1:12, 2:5
**RILEY** [19] - 2:2, 2:14, 3:21, 5:18, 6:1, 6:19, 7:18, 7:20, 10:20, 15:9, 16:23, 19:7, 19:19, 20:7, 21:1, 21:24, 22:2, 22:5, 22:11
**riley** [10] - 2:13, 6:8, 9:21, 10:18, 15:7, 19:5, 20:6, 20:25, 21:23, 21:25
**Risch** [1] - 1:19
**risk** [3] - 14:23, 17:7, 18:12
**RMR** [2] - 1:23, 23:17
**Road** [1] - 12:13
**rob** [1] - 17:24
**robbed** [1] - 15:18
**robberies** [3] - 15:14, 16:16, 17:18
**robbers** [2] - 15:18, 15:21
**robbery** [24] - 9:7, 9:16, 9:18, 10:21, 12:12, 12:22, 13:8, 13:9, 14:10, 14:22, 15:15, 15:17, 15:21, 16:2, 16:5, 16:7, 16:9, 16:13, 16:17, 16:18, 17:1, 17:24, 18:19
**robbing** [1] - 13:3
**role** [2] - 3:6, 3:7
**routine** [2] - 4:4, 5:22
**row** [1] - 2:24
**Rule** [3] - 17:6, 17:14, 18:11
**ruled** [1] - 20:12
**RUSSELL** [1] - 1:10

## S

**safe** [1] - 17:24
**satisfactorily** [1] - 18:10
**satisfied** [1] - 13:22
**scene** [1] - 14:21
**scheme** [1] - 17:18
**search** [16] - 4:25, 6:24, 7:12, 8:11, 8:15, 9:25, 10:4, 12:10, 12:16, 12:17, 12:19, 13:11, 13:14,

15:16, 19:22, 20:14
**searched** [2] - 11:13, 13:13
**searches** [2] - 12:13, 13:18
**seat** [2] - 2:20, 3:2
**second** [2] - 15:4, 18:19
**section** [3] - 8:16, 8:21, 10:14
**secured** [2] - 13:16, 13:17
**see** [2] - 2:2, 10:14
**Seek** [2] - 3:14, 13:23
**seeking** [1] - 4:24
**seized** [3] - 12:4, 12:12, 13:15
**seizure** [4] - 9:25, 10:4, 12:10, 19:23
**sense** [1] - 6:17
**separate** [1] - 18:7
**separating** [1] - 18:8
**September** [1] - 1:8
**serious** [2] - 14:23, 18:12
**set** [4] - 11:2, 19:12, 20:8, 22:3
**Sever** [4] - 3:13, 14:2, 17:11, 17:13
**several** [2] - 3:10, 5:4
**severance** [1] - 18:16
**Severance** [1] - 18:23
**severed** [1] - 18:17
**shall** [1] - 3:4
**short** [3] - 6:2, 10:13, 10:21
**short-circuit** [1] - 6:2
**showing** [1] - 11:10
**sidebar** [1] - 21:10
**sign** [1] - 4:5
**similar** [4] - 9:14, 17:16, 17:20, 18:2
**similarity** [1] - 15:24
**simply** [3] - 4:13, 22:7, 22:8
**situation** [2] - 2:9, 10:2
**slightly** [1] - 20:7
**sneakers** [3] - 16:11, 16:12, 16:13
**snow** [2] - 15:19, 15:22
**solely** [1] - 14:13
**solution** [1] - 21:2
**somewhat** [1] - 8:10
**sooner** [1] - 22:7
**sort** [8] - 3:18, 5:3, 5:22, 7:16, 14:15, 14:22, 15:3, 15:13

**Soul** [1] - 12:14
**sounds** [1] - 21:13
**space** [1] - 18:5
**speaking** [2] - 3:5, 3:7
**Special** [1] - 1:22
**specifically** [1] - 9:6
**split** [1] - 14:25
**spoken** [1] - 4:2
**spotted** [1] - 16:25
**stage** [1] - 5:4
**stand** [1] - 8:24
**standing** [5] - 3:1, 11:17, 11:21, 11:22, 13:10
**statement** [2] - 5:19, 5:21
**statements** [6] - 4:10, 4:16, 4:21, 4:23, 5:8, 14:14
**Statements** [2] - 3:11, 4:1
**STATES** [2] - 1:1, 1:3
**States** [4] - 1:13, 2:4, 23:6, 23:12
**status** [1] - 22:9
**stenographically** [1] - 23:9
**stenographically-reported** [1] - 23:9
**still** [1] - 3:18
**stipulate** [1] - 20:15
**stipulation** [2] - 19:11, 20:8
**stolen** [3] - 13:1, 16:20, 17:25
**stopped** [1] - 9:12
**store** [13] - 9:7, 9:9, 12:12, 13:3, 13:8, 14:17, 15:18, 16:5, 16:20, 17:19, 17:22, 17:23
**stores** [1] - 16:19
**Street** [7] - 1:13, 1:16, 1:24, 11:12, 16:1, 16:8, 17:4
**subject** [1] - 6:15
**subjected** [1] - 21:12
**submit** [9] - 4:14, 4:15, 5:6, 5:15, 6:9, 6:10, 11:23, 14:19, 20:3
**subsequent** [6] - 4:2, 4:25, 6:24, 13:7, 13:16, 13:17
**substantial** [2] - 15:2, 17:7
**substantially** [1] - 16:6
**sufficient** [2] - 18:20, 19:22

**suggestion** [1] - 15:12
**Suite** [1] - 1:20
**summarizes** [1] - 15:10
**supported** [3] - 11:5, 11:19, 19:9
**supporting** [1] - 12:19
**suppose** [1] - 7:3
**Suppress** [8] - 3:11, 3:12, 3:25, 4:20, 5:19, 6:20, 12:10, 21:3
**suppress** [1] - 4:24
**suppressed** [1] - 5:9
**surveillance** [2] - 13:3, 16:25
**surveilled** [1] - 9:18
**suspect** [2] - 13:8, 16:1
**suspected** [1] - 18:4
**suspects** [1] - 9:19
**SUV** [2] - 9:13, 13:5
**sweatshirt** [2] - 15:19, 15:23
**sword** [1] - 2:12

## T

**table** [1] - 2:6
**tangible** [1] - 5:10
**Tangible** [4] - 3:12, 4:20, 12:10, 21:3
**testify** [1] - 19:10
**testifying** [2] - 7:9, 21:11
**testimony** [8] - 7:6, 7:16, 11:14, 19:13, 20:1, 20:11, 20:17, 20:19
**TFO** [1] - 2:6
**THE** [47] - 1:1, 1:1, 1:10, 2:12, 2:15, 2:19, 2:25, 3:23, 4:18, 5:9, 5:12, 5:14, 5:16, 5:25, 6:12, 6:15, 6:18, 7:13, 7:19, 7:21, 8:6, 9:4, 10:8, 10:11, 10:15, 10:18, 11:20, 11:24, 12:9, 14:6, 15:7, 16:21, 17:12, 19:3, 19:5, 19:16, 19:21, 20:5, 20:14, 20:25, 21:6, 21:16, 21:23, 21:25, 22:3, 22:6, 22:12
**themselves** [1] - 12:23
**thereafter** [1] - 12:11
**therefore** [1] - 14:17
**third** [1] - 18:4

**threatened** [1] - 17:19
**three** [6] - 3:10, 9:8, 9:14, 9:19, 14:12, 16:17
**timing** [1] - 13:7
**tire** [2] - 16:22, 17:1
**today** [5] - 3:22, 7:6, 7:8, 11:14
**together** [1] - 14:24
**top** [1] - 14:22
**Towson** [1] - 1:20
**tracked** [1] - 9:11
**tracker** [4] - 9:10, 9:12, 14:11
**tracking** [1] - 12:24
**training** [2] - 8:19, 9:2
**transcript** [2] - 23:9, 23:11
**trial** [14] - 6:6, 6:8, 6:9, 8:12, 20:17, 20:18, 20:20, 20:22, 21:5, 21:10, 21:15, 21:17, 22:3, 22:4
**trials** [2] - 15:1, 18:7
**tried** [1] - 14:24
**true** [2] - 9:1, 23:9
**try** [2] - 15:3, 20:11
**trying** [3] - 10:12, 14:15, 14:22
**tucked** [1] - 17:3
**turned** [1] - 15:23
**two** [9] - 8:21, 14:24, 15:1, 15:14, 16:15, 16:16, 17:14, 18:8, 18:21
**Tyler** [2] - 1:18, 2:22

## U

**U.S.C** [1] - 23:8
**under** [5] - 17:6, 18:11, 21:4, 21:14, 21:17
**underneath** [1] - 16:22
**understood** [2] - 11:3, 21:22
**unfair** [1] - 15:4
**unique** [1] - 16:10
**unit** [2] - 9:11, 17:3
**UNITED** [2] - 1:1, 1:3
**United** [4] - 1:13, 2:4, 23:6, 23:12
**unless** [1] - 7:16
**unload** [1] - 16:19
**up** [6] - 3:1, 13:22, 20:17, 21:11, 22:6, 22:9

## V

**vaccinated** [2] - 3:6, 3:7
**various** [2] - 3:15, 6:22
**vehicle** [16] - 9:16, 10:23, 11:12, 12:1, 12:2, 12:4, 12:14, 12:19, 12:20, 13:6, 13:11, 16:1, 17:25, 18:1, 18:3, 18:4
**via** [1] - 21:10
**victims** [2] - 12:22, 17:19
**video** [3] - 13:3, 14:14, 16:25
**view** [2] - 9:24, 10:2
**violent** [1] - 9:18
**voluminous** [1] - 18:19
**vs** [1] - 1:4

## W

**waiver** [2] - 4:6, 4:7
**waiving** [1] - 4:8
**WALSH** [5] - 2:17, 4:15, 10:17, 12:7, 19:1
**Walsh** [9] - 1:15, 1:16, 2:15, 2:18, 4:13, 10:16, 12:6, 18:25, 19:16
**WALSH-LITTLE** [5] - 2:17, 4:15, 10:17, 12:7, 19:1
**Walsh-Little** [9] - 1:15, 1:16, 2:15, 2:18, 4:13, 10:16, 12:6, 18:25, 19:16
**warning** [1] - 4:5
**warrant** [16] - 5:2, 5:3, 7:3, 7:12, 7:14, 7:22, 7:24, 8:2, 8:6, 8:11, 9:3, 10:1, 10:4, 10:22, 12:17, 13:21
**Warrant** [1] - 10:23
**warranted** [1] - 10:1
**warrantless** [6] - 6:23, 7:8, 19:8, 19:17, 19:19, 20:2
**warrants** [21] - 4:25, 5:1, 5:2, 5:4, 6:22, 7:4, 8:4, 8:16, 8:21, 10:14, 10:25, 11:5, 11:18, 11:25, 12:11, 13:14, 19:23, 19:24, 20:13, 20:14
**waste** [2] - 18:7, 20:9

**watch** [1] - 2:25
**wearing** [6] - 9:10, 9:14, 15:19, 15:22, 16:10, 17:20
**West** [1] - 1:16
**wheel** [1] - 18:5
**whole** [1] - 9:2
**wish** [3] - 5:5, 19:25, 20:18
**wishes** [1] - 5:16
**withdrawing** [1] - 21:21
**withdrawn** [2] - 21:3, 21:8
**witness** [8] - 7:5, 7:8, 9:22, 14:14, 19:10, 20:11, 21:11, 21:12
**witnesses** [1] - 18:6
**word** [1] - 3:16
**words** [2] - 17:21, 21:19
**worn** [1] - 16:12
**writ** [1] - 2:9
**written** [1] - 15:10
**wrote** [3] - 5:15, 15:5, 20:3

## X

**Xavier** [2] - 1:18, 2:3
**XAVIER** [1] - 1:5

## Y

**yard** [1] - 9:13

## Z

**zero** [2] - 11:10, 14:20

## §

**§** [1] - 23:8