IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| DONTE ANTWAUN HERRING and | * | CRIMINAL NO. MJM-21-120 |
| XAVIER JEFFREY JONES, | * | |
| | * | |
| Defendants. | * | |
| ******* | | |

GOVERNMENT'S RESPONSE IN OPPOSTION
TO DEFENDANT HERRING'S MOTION TO SEVER

The United States of America respectfully submits this Response in Opposition to the Motion of Defendant Donte Herring To Sever His Trial From Co-Defendant Xavier Jones (the "Motion"). ECF No. 138. For the reasons that follow, the Court should deny the Motion.

FACTUAL BACKGROUND

I.   **October 23, 2020 Robbery.**

On October 23, 2020, at approximately 12:40 p.m., Jones and a co-conspirator[1] entered the Verizon store located at 7210 Baltimore Avenue, College Park, Maryland 20740. There were multiple victim customers and employees at the store at the time. Jones and his co-conspirator announced a robbery and forced the victims to go to the backroom of the store. Both Jones and his co-conspirator threatened the victims with death if they did not comply with their demands. Jones's co-conspirator brandished a firearm. Jones said, "open the back up. Open the back up. Open the back up before we kill y'all. . . . All we want is the iPhones."

A victim employee opened the door to the backroom of the store, and Jones and his co-conspirator forced the employee and the victim customers into the backroom. Once there, Jones

---

[1] The Government does not contend that the co-conspirator is Mr. Herring.

and his co-conspirator directed an employee to open the safe for them, and they then proceeded to steal $21,440.93 in merchandise (various mobile devices) from the store. They then fled.

Photographs in Jones's iCloud account show an individual holding some of the devices stolen during the robbery (based on their IMEI numbers) within hours after the robbery. A Federal Bureau of Investigation (FBI) lab analysis of the fingerprints and palm prints of the individual holding the devices in the photos (and visible in the photos) confirmed that the individual holding the devices was Jones.

II.     **December 8, 2020 Robbery.**

On December 8, 2020, at approximately 4:45 p.m., Jones and a co-conspirator entered the Russell Cellular Verizon store located at 6480 Dobbin Center Way, Columbia, Maryland 21045. Jones and the co-conspirator initially posed as customers shopping for phones and walked around various areas of the store. When the victim employee turned his back on Jones and his co-conspirator, the co-conspirator pointed a firearm at the employee. They then moved the victim employee into the backroom of the store and ordered him to open the store safe, which he did. They also ordered the employee to his knees.

With the safe open, Jones and his co-conspirator then stole $22,000.33 worth of merchandise and $1,273.00 in currency from the safe—loading the items into a neon yellow duffel bag carried by Jones. They then fled.

Photographs in Jones's iCloud account again show an individual holding some of the devices taken during the robbery (based on their IMEI numbers) shortly after the robbery. An FBI lab analysis of the visible fingerprints and palm prints of the individual holding the devices in the photos confirmed that the individual holding devices was Jones—just like the devices taken during the October 23, 2020 robbery.

III.    **December 17, 2020 Robbery.**

On December 17, 2020, at shortly after 7:00 p.m., Jones and Herring entered the Russell Cellular, Verizon store located at 3920 Washington Blvd., Suite 200 Halethorpe, Maryland 21229. After initially posing as customers browsing for cell phones, Jones and Herring eventually announced a robbery, and Herring brandished a semi-automatic firearm—pointing it at the victim employee.

Herring ordered the victim employee to take him and Jones to the store's safe, and the victim complied. They ordered the victim to open the safe. He did so. Jones and Herring then removed various electronic devices from the safe, including multiple boxes of Apple cellular telephones, watches and iPads—worth approximately $27,940.00—and loaded them into a duffel bag. Herring pointed his firearm at the victim while the safe was unloaded.

Jones then left the store with the stolen devices and got into a Dodge Caravan that had been reported stolen four days earlier. Herring then forced the victim employee to leave the area of the store's safe and directed him towards the register. Herring demanded cash from the register, and the victim employee opened it. Herring then removed approximately $1,313.00 from the till and left the store. He and Jones then fled in the stolen Dodge Caravan. Selected photographs from the store surveillance cameras are below. Herring can be seen wearing brightly colored New Balance brand sneakers. He has a Reebok fanny pack slung around his shoulder and is holding a firearm. Jones can be seen wearing a hooded sweatshirt and black Helly Hansen snow pants.





### IV. December 23, 2020 Robbery.

On December 23, 2020, at approximately 1:37 p.m., Rico Dashiell entered the AT&T store located at 10215 Reisterstown Road, Owings Mills, Maryland 21117. Dashiell initially acted like a customer of the store but, after Jones and Herring entered the store, he brandished a firearm, pointed it towards the victim and stated, "Yeah, you know what time it is." He also said, "If you don't want to die today, do what I say." Dashiell was wearing brightly-colored yellow high

visibility construction-style clothing.

Jones and Herring likewise brandished firearms after entering the store, pointing them at the victim customer and employees. They yelled, "get down." Herring was wearing the same brightly colored New Balance sneakers that he wore during the December 17, 2020 robbery that occurred less than a week earlier. Herring was wearing the same black Helly Hansen snow pants and hooded sweatshirt that he wore during the earlier robbery.

A victim customer was also ordered to empty his pockets, which he did. His wallet (containing his driver's license and credit cards) was taken, along with his car keys, which were on an orange STX lanyard, and his phone.

Dashiell then ordered one of the victims to walk to the back room of the store to open the store safe and escorted the victim to the back room at gunpoint. Jones and Herring were there already. They ordered the victim to open the safe, and the victim complied.

Jones and Herring then proceeded to remove nearly all of the electronic devices from the safe—including $48,767 worth of Apple and Samsung Galaxy devices (76 devices total)—and placed them in large black garbage bags they had brought with them. When Jones and Herring finished emptying the safe, they ordered three victims from the main floor of the store to a different location in the store—the room in the store where the safe was kept.

Dashiell also directed a victim employee to open the store's cash register, which she did. Dashiell then stole $322.00 from the register. The store ultimately sustained a total loss of $49,089.

Once all three victims were in the room containing the safe, Herring and Jones left the room and, as they left, pepper spray was sprayed in the direction of the victims' faces. Dashiell, Jones, and Herring then fled the store in a Kia vehicle that Jones earlier that day had stolen from one of his acquittances. The Kia vehicle was bearing registration tags that law enforcement later

determined had been stolen from another vehicle. Selected photographs from the store surveillance cameras are below:






In addition to the stolen merchandise, the robbers also inadvertently took a 3SI GPS tracker within a cell phone box from the store. As the robbers fled the store in the Kia vehicle, the tracker was activated and began being tracked by law enforcement.

V.      **Arrest of Defendants And Execution of Search Warrants.**

Law enforcement received GPS information concerning the location of the GPS tracker, which they relayed to responding Baltimore County Police Department (BCPD) units, including aerial aviation units.

The Kia vehicle was ultimately tracked to 5724 Calverton Street, Catonsville, Maryland 21228, a single family residence.  It arrived there at approximately 2:04 p.m.—less than a half hour after the robbery.

Aviation units observed and filmed the robbers—Jones, Herring, and Dashiell—outside the residence unloading the stolen merchandise from the AT&T store and bringing it into the residence.  Specifically, the robbers were observed carrying heavily weighted black plastic trash bags into the residence.  Law enforcement was aware at the time that the suspects in the robbery loaded the phones they took from the store's safe into black plastic bags.  Further, law enforcement observed that one of the suspects (Dashiell) was wearing a bright yellow high visibility construction outfit, substantially identical to the one worn during the robbery.  Also outside the residence was the Dodge Caravan used by the robbers during the December 17, 2020 robbery of the Verizon store, which law enforcement later determined had been stolen.  An aviation photo of the robbers unloading the Kia is below.



Law enforcement then established a perimeter around 5724 Calverton Street. Thereafter, the owner of the residence called the police and reported that her Kia rental car had been stolen. Additional law enforcement officers (including tactical units) ultimately responded to the scene and attempted for nearly four hours to make contact with the Defendants. The Defendants were unresponsive until tactical units deployed tear gas into the residence. The Defendants left the house shortly thereafter, and they were arrested without incident at approximately 6:00 p.m.

During a search incident to his arrest, law enforcement seized, among other things, $622.16 from Jones ($322 of which was proceeds from the robbery of the AT&T store), along with a round of ammunition.

Law enforcement executed a state search warrant of the residence. During their search of the residence, law enforcement recovered, among other things, (1) the clothing, gloves, and headwear worn by Herring, Jones, and Dashiell during the robbery of the AT&T store; (2) the 76 devices earlier that day stolen from the AT&T store, along with the 3SI tracker in large garbage bags; (3) the canister of pepper spray used to spray the victims during the robbery; (4) the stolen wallet belonging to one of the victims of the robbery; (5) the three firearms used by Jones, Herring, and Dashiell during the earlier robberies—a black, Taurus, Model PT111G2A, 9 mm, semi-automatic pistol, SN:TMC06714, loaded with 9 rounds, one chambered; a black, Stoeger, Model STR-9, 9mm, semi-automatic pistol, OBLITERATED Serial Number, loaded with 10 rounds; and a Polymer 80 Gray Grip with a black slide 9mm semi-automatic pistol, with no serial number, which was also loaded; and (6) the black Reebok fanny pack used in connection with both of the robberies.

During a search of the Kia vehicle, also pursuant to a state search warrant, law enforcement seized, among other things, keys on an STX lanyard belonging to one of the victims of the AT&T store robbery earlier that day, various pairs of gloves, and garbage bags identical to

the ones used in connection with the robbery. Law enforcement located the license plate assigned to the Kia vehicle on the rear passenger tire of the Dodge Caravan, which had been parked next to the Kia.

## PROCEDURAL HISTORY

On April 22, 2021, a Grand Jury sitting in the District of Maryland returned a four count Indictment charging Herring and Jones with two Counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and (2) two counts of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The Grand Jury further charged Dashiell with one count of Hobbs Act Robbery and one count of Brandishing a Firearm During a Crime of Violence.

On March 31, 2022, Dashiell pleaded guilty to Counts Three and Four of the Indictment and was sentenced.

Various pre-trial motions were filed, ECF Nos. 70-73, and Judge Russell on September 23, 2022 held a motions hearing and denied the motions. ECF No. 89.[2]

A jury trial was scheduled to begin on March 6, 2023 but was later postponed after Jones's previous counsel was permitted to withdraw at the request of Jones. ECF Nos. 123-126. After holding a conference call with counsel (including Jones's new counsel, who was appointed on March 6, 2023), Judge Russell scheduled trial to begin on February 5, 2024. ECF No. 126.

On October 23, 2023, a Grand Jury sitting in the District of Maryland returned a Superseding Indictment charging Defendant Jones with two additional Counts of Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and (2) two additional counts of Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). These new

---

[2] Judge Russell initially ruled that ECF No. 71 (Motion to Suppress) was denied but later clarified that if the issue was not later raised that, he was presume that the motion was withdrawn. Motions Hearing Tr. at 13, 21.

charges arise out of the October 23, 2020 and the December 8, 2020 robberies. Herring was not charged in these new counts.

This matter was transferred to Your Honor, and by Order dated December 1, 2023, the Court, after conferring with counsel regarding scheduling, scheduled the pre-trial conference for January 19, 2024, and set the matter in for jury trial to begin on February 26, 2024. ECF No. 137.

On December 1, 2023, Herring filed the instant Motion seeking to have the Court sever his trial from that of Jones. ECF No. 138.

### ARGUMENT

Herring's Motion is meritless, and the Court should deny it.

I. **Applicable Law.**

Rule 8(b) of the Federal Rules of Criminal Procedure provides:

> (b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

"[J]oinder is the 'rule rather than the exception.'" *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (quoting *United States v. Acker*, 52 F.3d 509, 514 (4th Cir. 1995)). "[D]efendants may, and indeed should, be indicted and charged together if they are alleged to have participated in the same act or transaction." *United States v. Min*, 704 F.3d 314, 319 (4th Cir. 2013) (citing Fed. R. Crim. P. 8(b)). As the Fourth Circuit has put it:

> We adhere to the general principle that when defendants are indicted together, they should be tried together. Joint trials are more efficient, and generally serve the interests of justice by avoiding the inequity of inconsistent verdicts. Therefore, when an indictment properly has joined two or more defendants under the provisions of Rule 8(b), severance pursuant to Rule 14 is rarely granted.

*United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012) (cleaned up).

When defendants have been properly joined under Fed. R. Crim. P. 8, a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  The Fourth Circuit has noted that "[a] defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." *United States v. Akinkoye*, 185 F.3d 192, 197 (4th Cir. 1999).  The same principle applies where the evidence against one co-defendant is more inflammatory than the evidence against other co-defendants. *See, e.g.*, *Dinkins*, 691 F.3d at 368-69 (affirming district court's denial of defendant's motion to sever where capital and non-capital defendants were charged in the same indictment with committing different murders); *United States v. Hall*, 93 F.3d 126, 131 (4th Cir. 1996) (affirming the denial of defendant's motion to sever and rejecting defendant's argument that evidence brought against the co-defendant on a related murder charge may have inflamed the passions of the jury).  Severance is only necessary upon a showing that actual prejudice will result from a joint trial.  *United States v. Shealey*, 641 F.3d 627, 633 (4th Cir. 2011).

The Fourth Circuit has likewise repeatedly recognized that oftentimes jury instructions "will suffice to cure any risk of prejudice as a result of the joint trial." *Min*, 704 F.3d at 319; *see also Dinkins*, 691 F.3d at 368 ("any risk of prejudice that may have existed was minimized by measures less drastic than severance, including limiting instructions given by the district court when certain evidence was admitted against one or more, but not all, defendants"); *United States v. Najjar*, 300 F.3d 466, 475 (4th Cir. 2002) (any actual prejudice was cured by limiting instructions); *United States v. Johnson*, 219 F.3d 349, 357 (4th Cir. 2000) (court properly denied defendants' motion to sever, where defendants contended they were involved in separate drug

enterprises, and court "provided a cautionary instruction to the jury to prevent it from grouping all of the evidence against both defendants"); *United States v. LaRouche*, 896 F.2d 815, 831 (4th Cir. 1990) ("[C]urative instructions given to the jury by the district court go a long way in eliminating any prejudice resulting from the spillover effects of joinder.").

## II. Joinder Will Not Have a Prejudicial Effect Warranting Severance[3]

Herring maintains that he should be severed because a joint trial with Jones would be prejudicial to him.  Specifically, he maintains that the "spillover effect of the evidence from the October 23, 2020 and December 8, 2020 robberies (for which Mr. Herring is not charged) amounts to clear prejudice to Mr. Herring's defense to the December 17, 2020 and December 23, robberies." ECF No. 138 at 3.  Herring argues that he will be prejudiced because there is a possibility that a juror could conclude that "Mr. Herring is guilty of the crimes to which he is charged because he was possibly the person involved in the other uncharged crimes." *Id.* at 5.

Herring is wrong.  As an initial matter, a defendant has no right to a severance simply because the evidence against certain co-defendants is stronger, or even more inflammatory, than others. *See, e.g.*, *United States v. Chavez*, 894 F.3d 593, 605-06 (4th Cir. 2018) (motion to sever was properly denied despite the trial including evidence of violent racketeering activity with which defendant was not directly involved); *United States v. Campbell*, 963 F.3d 309, 318 (4th Cir. 2020) ("[T]he mere fact that evidence against one or more co-conspirator is stronger or more inflammatory than the evidence against others does not necessarily require severance."); *United States v. Zelaya*, 908 F.3d 920, 928-929 (4th Cir. 2018); *Akinkoye*, 185 F.3d at 197.  What's more, it is well established that there does not need to be a complete overlap in defendants and offense

---

[3] There is no question that all counts in the Superseding Indictment are properly joined under Fed. R. Crim. P. 8(b), as the offenses charged are of a similar character and are part of a common scheme.  All counts charge similar conduct (the armed robbery of cell phone stores), the incidents involved a similar *modus operandi*, and all occurred during a two month period at the end of 2020.  Herring does not argue to the contrary.

participation to warrant joinder. For example, in *United States v. Dinkins*, 691 F.3d 358, 368 (4th Cir. 2012), the Fourth Circuit held that severance was not required even though the defendants in that case were charged in separate murders not attributable to all defendants: Some of the Dinkins defendants were charged with capital murder, while others were charged with non-capital murder. But even this fact did not call for a severance. *Id.* at 368-69.

Here, Jones is charged in connection all four of the armed robberies in the Superseding Indictment; Herring is charged in connection with two of the four robberies. Herring and Jones were tracked by GPS as they fled from the store that they robbed on December 23, 2020, and they were captured by a law enforcement aviation unit entering a house located at 5724 Calverton Street. They were later arrested at the house, and law enforcement would go on to seize evidence from the location linking Herring and Jones to both the December 17, 2020 robbery and the December 23, 2020 robbery. Law enforcement's continued investigation would later link Jones to two additional robberies—a robbery on October 23, 2020 and a robbery on December 8, 2020.

To be sure, Jones is charged with two robberies that Herring is not. But severance is not justified simply because some evidence admitted against one defendant may not be necessarily applicable to another defendant, a circumstance that Rule 8(b) already assumes may arise. Fed. R. Crim. P. 8(b) ("Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."); *see also United States v. Brugman*, 655 F.2d 540, 543 (4th Cir. 1981) ("'Participation' in the same series of transactions as referred to in Rule 8(b) does not require 'participation' in each transaction of the series."). Moreover, this hardly the type of case where multiple defendants "are tried in a complex case…with markedly different degrees of culpability" that would require severance because of heightened prejudice to the defendants. *Zafiro*, 506 U.S. at 539. Indeed, if severance were granted, the United States would essentially be required to present much of the same evidence (including evidence from civilian

victims) at separate trials: Evidence regarding (1) the December 17, 2020 robbery, (2) the December 23, 2020 robbery, (3) the arrest of the Defendants, (4) the execution of a search warrant and seizure of evidence at 5724 Calverton Street, (5) mobile devices seized from the house, (6) cell site location information and analysis by an FBI Cellular Analysis Survey Team (CAST) agent, (7) the contents of at least one electronic account. Allowing severance given all of this evidence so would create repetitive trials, and would constitute an unnecessary waste of judicial resources.

Herring argues that there will be prejudicial "spillover" effect to Defendant if severance is not granted. But such speculative allegations offered in support of a motion to sever are insufficient to merit the severance sought. *See, e.g.*, *United States v. Najjar*, 300 F.3d 466, 473 (4th Cir. 2002) (defendant's reliance on speculation about spillover effect prejudice was insufficient to warrant severance); *accord United States v. Flores*, No. 1:05-cr-558, 2007 WL 2904109, at *65 (N.D.Ga. Sept. 27, 2007) ("Defendants raise a variety of general, unsupported, and speculative grounds for severance, such as, antagonistic defenses, need for co-Defendant testimony, and the like, but fail in any way to meet their initial burden of proof."). And general concerns of "guilt by association"—akin to the concern raised by Herring here—can be alleviated by properly instructing the jury. *See United States v. Lanas*, 324 F.3d 894, 900 (7th Cir. 2003) (denying the defendants' "conclusory" argument that "they were prejudiced by the 'spillover' effect of having the charges tried together," and ruling that this concern was negated by the district court's jury instruction and "the fact that much of the evidence admitted at their joint trial would have been admissible against them in separate trials as well.").

Indeed, even assuming for the sake of argument that Herring will suffer prejudice from the admission of evidence pertaining to Jones's other crimes, any such prejudice would be mitigated by a limiting instruction. *See, e.g.*, *Zafiro*, 506 U.S. at 539 ("[L]ess drastic measures, such as

limiting instructions, often will suffice to cure any risk of prejudice."); *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987) ("No prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions, appraising the independent evidence against each defendant."). As noted, the Fourth Circuit has long favored limiting instructions to the jury over the more radical remedy of severance, which would require multiple trials. *See, e.g.*, *Dinkins*, 691 F.3d at 368; *Mir*, 525 F.3d at 357-58; Najjar, 300 F.3d at 475. Here, the Court will undoubtedly instruct the jury to give individual consideration to each count as to each Defendant charged in the Superseding Indictment. Such an instruction will more than adequately diminish the potential for prejudice. *See, e.g.*, *Dinkins*, 691 at 368 ("[A]ny risk of prejudice that may have existed was minimized by measures less drastic than severance, including limiting instructions given by the district court when certain evidence was admitted against one or more, but not all, defendants."); *LaRouche*, 896 F.2d at 831 ("We have also made clear that curative instructions given to the jury by the district court go a long way in eliminating any prejudice resulting from the spillover effects of joinder."). Because there is no serious risk that trying Herring on all counts with appropriate instructions would "prevent the jury from making a reliable judgment about guilt or innocence" on each count, severance should be denied. *United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012).

[INTENTIONALLY LEFT BLANK]

## CONCLUSION

For all of the above reasons, Herring's Motion should be denied.

                                        Respectfully submitted,

                                        EREK L. BARRON
                                        United States Attorney

By:          /s/
                Paul Riley
                Michael Aubin
                Assistant United States Attorneys
                36 S. Charles Street, 4th Fl.
                Baltimore, Maryland 21201